Alfred A. BERVING and Cyrilla Berving d/b/a Rockport, Inc., and Rockport, Inc., Appellants,

v.

R & R COMPANY and R & R Company d/b/a R & R Sign Company and Rita L. Patrick, Respondents.

No. ED 79054.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 22, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 13, 2002.

Mark A. Kinzie, Sandra J. Wunderlich, James M. Meister, St. Louis, MO, for appellant.

Ted F. Frapolli, Cynthia Garnholz, St. Louis, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Alfred A. and Cyrilla Berving (collectively "Appellants") appeal from the September 19, 2000 Judgment of the Honorable Patrick J. Clifford of the Circuit Court of St. Louis County, and December 18, 2000 judgment of the Honorable Robert S. Cohen of the Circuit Court of St. Louis County. Appellants brought an action against Rita L. Patrick and R & R Sign Company (collectively "Respondents") for rescission of a purchase contract based upon misrepresentation. Respondents filed a counterclaim for breach of contract and requested attorney's fees and expenses. Judge Clifford, sitting in equity, ruled in favor of Respondents, finding no misrepresentation and denying Appellants' claim of rescission. After transfer of the legal claims by Judge Clifford, Judge Cohen ruled in favor of Respondents on their breach of contract claim and awarded Respondents attorney's fees, royalties, and damages. We affirm in part and reverse and remand in part.

Reviewing the record in light most favorable to Respondents, we find in April 1998 Appellants purchased the assets of R & R Sign Company ("R & R") owned by Rita L. Patrick ("Patrick"). R & R was engaged in the electrical and neon sign business. At the time of purchase, Appellants had no experience in such business. Patrick had seventeen years of experience in the electrical sign business and had operated R & R since 1985. Appellants observed Patrick's operation of the business and reviewed her business files prior to signing the purchasing agreement. Appellants and Patrick met approximately twenty to twenty-five times to discuss the operation of R & R. Patrick informed Appellants that an electrical permit and licensed electrician was needed for all major repairs and the final connection of new sign installations. Patrick further stated that unlicensed electricians could not run any new electrical lines, but they could perform replacement work on the signs; they could take out a part and put in a new part as long as it was a simple replacement of the same components. Appellants also had conversations with Chuck Poling ("Poling"), a licensed electrical contractor that Patrick worked with on numerous occasions. Poling told Appellants that Patrick's interpretation of what work could be done without a licensed electrical contractor was correct. Alfred A. Berving ("Berving") also had a conversation with a Mr. Stevens ("Stevens") who owned a sign company in the St. Louis area. Stevens told Berving that he had done repair work on electrical signs without a licensed electrical contractor for government buildings.

During the course of her business, Patrick employed unlicensed electricians and contracted with licensed electricians to obtain electrical permits and handle major electrical work. Her bills and invoices reflected rates of $47 per hour for licensed electricians and $19 per hour for unlicensed electricians. Richard Schmidt ("Schmidt"), Appellants' accountant, examined R & R's tax returns and financial statements for 1995–1997 and determined that expenses paid to licensed electricians

was 8.54 percent of its gross revenue. This represented about twenty hours of licensed electrical contractor services per month. Relying upon this financial information, Schmidt projected revenues Appellants might expect to generate from the business and based upon these figures he recommended that Appellants purchase the business.

On April 11, 1997, the parties executed and entered into the purchase and sale contract ("contract"). In the contract, Patrick provided a warranty, which stated in part: "Seller has complied with and is not in violation of all federal, state, and local statutes, laws and regulations affecting seller's properties or the operation of seller's business."

After the April 11, 1997 closing, Appellants began operating R & R with Patrick's consulting assistance, for which she was to be compensated as stated in the contract. In the first year of operation, Appellants were successful in continuing the business near the level at which it had operated during the year prior to purchase. Judge Clifford found, however, that shortly after the purchase of the business, Berving asked Patrick to take back the business due to family and personal problems and because the business was requiring more hours of work than he had anticipated, but Patrick refused.

On April 10, 1998, Berving and his employee, Rick King ("King"), were removing an old neon sign from a building with the intention of installing a new sign. Dennis St. Clair ("St. Clair"), an assistant electrical inspector for St. Louis County, saw Berving and King working on the sign and began questioning Berving. When St. Clair arrived, the sign had been completely disassembled and was lying in pieces on the ground. St. Clair told Berving that he could not handle certain electrical components unless he was a licensed electrician.

Neither Berving nor King was a licensed electrician. St. Clair issued Berving a citation charging him with installing electrical equipment without a permit by unlicensed persons in violation of St. Louis County ordinance. Berving pleaded guilty to the violation and paid a $250 fine.

On April 13, 1997, Rick Hill ("Hill"), Chief Electrical Inspector of the St. Louis County Electrical Inspections Office, sent a "Notice of Violation—Stop Work Order" to Berving along with the applicable St. Louis County ordinance and a letter stating that Berving had been cited for "violation of St. Louis County ordinance 17337–93 in that you have started construction which has not been authorized by the required permit." On that same day, Berving met with St. Clair and St. Clair explained the work Berving could and could not perform as an unlicensed electrician.

After this conversation, Appellants believed that all electrical work on a sign must be done by a licensed electrician and they would need a licensed electrician for ninety to ninety-five percent of the work they were doing to comply with St. Louis County Ordinances. They estimated that his would cost approximately $55,000 to $70,000 annually as opposed to $35,000 annually to use unlicensed electricians. Evidence adduced at trial demonstrated this belief was mistaken. Hill testified that St. Louis County ordinances are interpreted to allow certain electrical work to be performed by unlicensed electricians, like minor repairs. St. Clair testified that electrical component parts could be replaced with like component parts by unlicensed electricians. This testimony is consistent with Patrick's representations.

Appellants met with Patrick on May 2, 1998, and again asked her to take back the business. Patrick refused. Thereafter, Appellants finished the work they had started or already agreed to before April

10. They subcontracted out all additional work to Davis Maintenance Service.[1] On May 15, 1998, through his legal counsel, Berving sent a letter to Patrick requesting rescission of the contract. Patrick once again refused. Thereafter, Appellants made no further payments to Patrick.

Appellants filed suit against Respondents for rescission, alleging that Patrick made material misrepresentations about when a licensed electrical contractor needed to be used, and Patrick breached the warranty provided in the contract by conducting her business without a licensed electrician on staff. Respondents filed a counterclaim alleging Appellants breached the contract by violating a non-compete clause and failing to make payments and royalties as specified in the contract. Appellants now appeal the judgment of Judge Clifford, finding Patrick made no misrepresentations, and Appellants failed to prove that Patrick breached the warranty in the contract. Appellants also appeal the judgment of Judge Cohen, granting Respondents' breach of contract counterclaim and awarding Respondents consulting fees, royalties, attorney's fees, and damages for violating a non-compete agreement.

Appellants' first four points basically argue Judge Clifford erred in finding that Patrick made no misrepresentations or breach of warranty. Appellants claim that the alleged misrepresentation allows for rescission of the purchase agreement under Missouri law. Because we find no misrepresentation or breach of warranty, we affirm Judge Clifford's judgment denying rescission.

■ At the equity hearing, Patrick testified that she told Appellants that they would need a licensed electrical contractor to make the final connection and all major repairs. Berving confirmed Patrick's tes-

timony. At trial he testified that Patrick told him that he would need an electrical contractor for a final connection, and during deposition he admitted that Patrick told him that he would need a licensed contractor and permit for "major electrical wiring." Further, Berving admitted that while Patrick provided him a folder containing not only St. Louis County ordinances, but also ordinances of other municipalities in which R & R conducted business, he did not look at them in detail. Chief Electrical Inspector for St. Louis County, Hill, testified that an unlicensed electrician could perform minor repairs like replacing like electrical components with like components. This supported Patrick's testimony

Appellants failed to prove that Patrick made any misrepresentations with reference to when a licensed electrical contractor must be used. Further, Appellants failed to prove that Patrick was operating R & R in violation of applicable laws and regulations. We find there is substantial evidence to support Judge Clifford's judgment. Therefore, Appellants' points one through four are denied.

■ Next, Appellants bring four claims of error against Judge Cohen, presiding over the breach of contract counterclaim. We must first address Appellants' eighth point on appeal, as it is a jurisdictional question. Appellants contend that Judge Cohen was without jurisdiction to hear Respondents' counterclaim because the equity court, Judge Clifford, had already entered its Rule 74.01(b) Amended Order and Judgment and Appellants had already filed their Notice of Appeal of the equity court's judgment before Judge Cohen ruled on the breach of contract counterclaim. We disagree.

1. Davis Maintenance Services employed only unlicensed electrical contractors.

Appellants cite to *State v. Bibb*, 922 S.W.2d 798, 803 (Mo.App. E.D.1996) for the proposition that once notice of appeal is filed, the trial court loses jurisdiction of the case and cannot exercise any judicial function; the trial court may, however, exercise functions of purely ministerial or executive nature. While this is the general rule, it is not applicable in the case at hand. First, this court never had proper jurisdiction over the equity claims that were appealed from Judge Clifford's judgment because the case was not properly certified under Rule 74.01(b) and therefore was not a final and appealable judgment. We dismissed the appeal. See, Court Order in *Alfred A. Berving, et al. v. R & R Company, et al.*, No. ED 78644 (December 22, 2000).

Second, even if this court properly had jurisdiction of the equity claims before it, Judge Cohen still would have had proper jurisdiction over the remaining legal claims. There is no legal impediment to reviewing and ruling on issues of a case when other separate issues have been properly certified under Rule 74.01(b). Appellants' eighth point is denied.

In their fifth point, Appellants contend that Judge Cohen erred in his judgment awarding attorney's fees to Respondents because (1) the trial court did not have jurisdiction to award attorney's fees because Judge Clifford had previously denied this relief to Respondents, (2) the contract did not allow recovery of attorney's fees spent to defend against Appellants' rescission claim, (3) the trial court failed to separate fees incurred by Respondents' prosecution of their breach of contract claim and fees incurred by Respondents' defending against Appellants' rescission claim, and (4) Respondents are not entitled to recover attorney's fees incurred pursuing excessive discovery disputes in which they did not prevail.

In his September 19, 2000 judgment, Judge Clifford neither granted Appellants' request for attorney's fees in pursuing their claim for rescission nor did he grant Respondents' prayer for attorney's fees associated with defending against Appellants' claim for rescission. Following Judge Clifford's judgment, disposing of all equitable claims, he transferred all remaining legal claims to Judge Cohen. Thereafter, Judge Cohen found Appellants liable for breach of contract and granted Respondents' prayer for attorney's fees and expenses associated with bringing Respondents' breach of contract counterclaim *and* for defending against Appellants' claims for rescission. Appellants allege that Judge Cohen, sitting as the at-law judge, did not have jurisdiction to award attorney's fees and expenses to Respondents for defending against Appellants' equitable claim of rescission. We agree.

Generally, under Missouri law each litigant must pay his own attorney's fees unless statute or contract provides otherwise. *Palmer v. Hobart Corp.*, 849 S.W.2d 135, 143 (Mo.App. E.D.1993). Judge Clifford disposed of all the equitable claims and transferred only the legal claims to Judge Cohen. Because Respondents did not specifically invoke the indemnity provision of the contract in their answer as the basis for recovering attorney's fees associated in defending against Appellants' rescission claim, their request for attorney's fees remained in equity. Therefore, because Judge Clifford disposed of all the equitable claims and in doing so did not award Respondents' attorney's fees in defending against Appellants' rescission claim, Judge Cohen, reviewing only the legal claims, did not have authority to grant Respondents attorney's fees based solely upon the equitable claim of rescission. Judge Cohen was free to grant attorney's fees on Respondents' breach of

contract claim however. Therefore, we remand to allow Judge Cohen to enter an award of attorney's fees owed to Respondents based solely on the breach of contract counterclaim.

■ In Appellants' sixth point, they allege the trial court erred in awarding royalties based upon a "best efforts" obligation that was not expressed in the contract. They argue that the court cannot add an implied provision to the contract when such provision was not expressly included. The contract provided that:

> Buyer agrees to pay Consultant, as royalty for the right to sell under the name R & R Sign Company five percent (5%) of the yearly gross sales receipts ....for three years following the execution of this agreement. For the purpose of calculating the royalties the gross sales receipts shall be capped at $200,000 in the first year ....$220,000 in the second year ....and $240,000 in the third year of this agreement....

Appellants failed to pay Patrick any royalties prior to their breach of contract. Patrick testified that in the three years preceding the sale of R & R, she generated gross receipts in excess of $200,000. However, once Appellants acquired the business, the gross sale figures for the first three years were: $201,171, $164,390, and $130,401 respectively. Instead of basing the royalties owed to Patrick on these three figures, Judge Cohen ordered Appellants to pay $10,000 for each of the three years, totaling $30,000. He based this amount on evidence that Appellants did not employ their "best efforts" to maximize profits over the three years. Judge Cohen felt had they employed their "best efforts" to maximize profits, they could

have expected to gross at least $200,000, based upon the gross sales Patrick had generated in her last years of operating the business.

Judge Cohen erred in awarding royalties based upon a "best efforts" standard rather then actual gross sales receipts. The contract between the parties does not expressly or implicitly contain a "best efforts" requirement. Therefore, we remand to enter a judgment of royalties based on actual sales receipts in the amount of $19,523.01 plus interest of $3,512.82, for a total amount of $23,035.83. Appellants' sixth point is granted.

■ Appellants argue in point seven that Judge Cohen erred by overcalculating the amount of pre-judgment interest accrued on the damages awarded under the non-compete agreement. Judge Cohen awarded pre-judgment interest from May 15, 1998. However, as of May 15, 1998, Appellants were current on their payment under the contract, having made thirteen (13) payments and leaving twenty-three (23) monthly payments due. Pre-judgment interest could only accrue on these amounts as they become due. Respondents concede this issue.[2] Thus, we remand to the trial court to correct the judgment and to determine the proper amount of interest accrued as payments came due. Appellants' seventh point is granted.

In summary, we deny Appellants' first four points and in so doing affirm the judgment entered by Judge Clifford. We further deny Appellants' eighth point. We reverse and remand as to point five, finding Respondents may be awarded attorney's fees solely based upon the breach of contract claim; point six, finding that roy-

**2.** Appellants claim the total amount of interest actually owed through the date of trial is $4,045.15, and the total award under the non-compete agreement is $32,795.15. Respondent alleges the total amount of interest actually owed is $5,158.73, and the total award under the non-compete agreement is $33,908.73.

alties must be determined based upon the actual gross sales receipts; and point seven, finding that pre-judgment interest could accrue only as payments came due. Respondents' Motion for Attorney's Fees and Expenses on Appeal is also remanded for the trial court's determination.

Affirmed in part and reversed and remanded in part.

CRANDALL, P.J., and SIMON, J., concur.