

# SUPREME COURT OF MISSOURI
## en banc

IN THE MATTER OF FORECLOSURE LIENS )
FOR DELINQUENT TAXES BY ACTION IN )
REM:  COLLECTOR OF REVENUE, BY AND )
THROUGH THE DIRECTOR OF )
COLLECTIONS FOR JACKSON COUNTY, )
MISSOURI, )
                                              )
        Respondents, )
                                              )
vs.                                       )         No. SC93982
                                              )
PARCELS OF LAND ENCUMBERED WITH )
DELINQUENT LAND TAX LIENS; REALTY )
ACQUISITION, LLC, )
                                              )
        Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
**Honorable Michael Manners, Judge**

*Opinion issued January 13, 2015*

Realty Acquisition, LLC, appeals the circuit court's judgment sustaining motions by Beemer Construction Company and Seal-O-Matic Paving Company to set aside a tax sale of certain real property to Realty.  Realty argues that the trial court erred in holding that, because Beemer and Seal-O-Matic had mechanic's liens on the property, they were entitled to personal notice by mail of the tax sale.  In support, Realty notes that section 141.540, RSMo Supp. 2013, the statute governing notice of tax sales, requires only notice by publication to persons other than owners.  This Court affirms.

A mechanic's lien properly filed with the clerk of the court constitutes a substantial property interest that is entitled to due process protection, including the giving of personal notice by mail of a tax sale to those mechanic's lienholders whose names and addresses are reasonably ascertainable from public records. The clerk of each circuit court maintains a book of abstracts of mechanic's lien filings that includes the name and address of each person with a mechanic's lien claim on particular property. *§ 429.090, RSMo 2000.* This Court recognized in *State ex rel. Erbs et al. v. Oliver, 237 S.W.2d 128, 130 (Mo. banc 1951)*, that the abstract is "a proper public record." No reason is given as to why holders of properly filed mechanic's liens are not entitled to due process protection of their property interests, including personal notice by mail, other than that it would require the county collector of revenue to look in two locations rather than in a single location to determine who is entitled to personal notice. This minimal additional burden is not sufficient to outweigh the due process rights of those possessing mechanic's liens on a property whose names and addresses are reasonably ascertainable from the public records maintained by the county in its circuit clerk's office, as required by statute.

Because it is uncontested that, as required under the pertinent provisions of section 429.080,[1] Beemer and Seal-O-Matic had filed their respective mechanic's liens with the clerk of the Jackson County circuit court, the trial court did not err in setting aside the tax sale due to inadequate notice. Affirmed.

---

[1] Although Beemer filed its lien before section 429.080 was amended in the 2007 legislative session, the pertinent portions of that statute were not changed by that amendment and remain the same today as they have been since 2000. References to all statutes other than section 429 are to RSMo Supp. 2013.

## I. STATEMENT OF FACTS

Sunnypointe, LLC, an administratively dissolved Missouri limited liability company, owned a parcel of real property, commonly known as Sunny Pointe 2nd Plat, located at the southeast intersection of R.D. Mize Road and N.E. Chapman Drive in Blue Springs (the "property"). In August 2006, Beemer installed sanitary sewers, storm sewers, and water mains on the property. In January 2007, Seal-O-Matic installed curbs and asphalt for streets on the property. Sunnypointe did not pay Beemer or Seal-O-Matic for their services. Beemer, in April 2007, and Seal-O-Matic, in December 2007, filed mechanic's liens against the property with the clerk of the Jackson County circuit court. Beemer's mechanic's lien was for $164,879.76, and Seal-O-Matic's mechanic's lien was for $187,494.80. It is undisputed that both parties complied with section 429.080, which requires, in pertinent part, that a party filing a mechanic's lien:

> [F]ile with the clerk of the circuit court of the proper county a just and true account of the demand due him or them after all just credits have been given, which is to be a lien upon such building or other improvements, and a true description of the property, or so near as to identify the same, upon which the lien is intended to apply, with the name of the owner or contractor, or both, if known to the person filing the lien, which shall, in all cases, be verified by the oath of himself or some credible person for him.

Sunnypointe did not pay the 2007 taxes on the property before they became delinquent, so on May 24, 2010, the Director of Collections for Jackson County (the "collector") filed a petition[2] requesting: (1) foreclosure on the property under the land tax

---

[2] Missouri's land tax collection law states that "[w]henever it shall appear that a tax bill has been due and unpaid for a period of at least two years after the date on which … it became delinquent … the tax lien … shall be summarily foreclosed in the manner provided in sections 141.210 to 141.810." *§ 141.260.1, RSMo 2000.*

3

collection law for unpaid real estate taxes and (2) a court order for a public sale of the property for payment of all delinquent tax bills. On or about June 4, 2010, notice by certified mail of the foreclosure action was sent to Sunnypointe, the registered owner.[3] On November 12, 2010, the trial court entered final judgment in the foreclosure action allowing the collector to sell the property at a tax sale.

The collector scheduled the tax sale for August 22, 2011. He provided publication notice of the sale as well as notice by certified mail to Sunnypointe on or about June 28, 2011. But, although Beemer and Seal-O-Matic had filed their mechanic's liens with the clerk of the circuit court and the clerk's abstract book showed these liens and the lienholders' names and addresses, no attempt was made to examine the clerk's records or otherwise identify or personally notify these mechanic's lien claimants. Therefore, neither Beemer nor Seal-O-Matic received personal notice of the tax sale, and neither was aware of the publication notice prior to the occurrence of the tax sale.

Realty purchased the property at the tax sale for $51,000. The notice of sale to Realty states that this included $341.47 in taxes, interest, penalties, attorney fees, and costs that were owed on the property at the time of the sale.

On November 9, 2011, after learning about the sale, Beemer and Seal-O-Matic entered appearances in the tax foreclosure action to oppose confirmation of the tax sale, arguing that the failure to give them prior personal notice of the tax sale violated their due process rights because of their interest in the property represented by their respective

---

[3] The record does not indicate that there was a mortgagee.

4

mechanic's liens. On June 4, 2012, the trial court set aside the tax sale as null and void. Realty appealed. Following an opinion by the court of appeals, this Court granted transfer. *Mo. Const. art. V, § 10.*[4]

## II.   STANDARD OF REVIEW

The trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).* "If the issue to be decided is one of fact, this Court determines whether the judgment is supported by substantial evidence and whether the judgment is against the weight of the evidence." *JAS Apartments, Inc. v. Naji, 354 S.W.3d 175, 182 (Mo. banc 2011).* Questions of law are subject to this Court's de novo review. *Id.* This appeal presents only questions of law.

## III.   DISCUSSION

Realty argues that the trial court erred in setting aside the tax sale simply because the collector did not give personal notice to the holders of mechanic's liens. It argues that notice had to be given only as set out in section 141.540 and that section requires only publication notice, not personal notice, to persons other than the property owner. Beemer and Seal-O-Matic agree that section 141.540 requires only publication notice to persons other than the property owner, but argue that their filing of their mechanic's liens gives them a substantial property interest entitling them to due process protection and

---

[4] Although the collector commenced the underlying tax foreclosure action and is listed as respondent here, the collector has not independently participated in this appeal.

5

that, under the governing law as explained by this Court and by the United States Supreme Court, this requires notice by mail or other means reasonably likely to apprise them of the tax sale.[5]

Section 141.540 sets out the statutory requirements for notice of tax sales. Section 141.540.5 states that the county collector must provide notice by certified, registered, or restricted mail of the tax sale to:

> [T]he persons named in the petition as being the last known persons in whose names tax bills affecting the respective parcels of real estate described in said petition were last billed or charged on the books of the collector, or the last known owner of record, if different, and to the addresses of said persons upon said records of the collector.

Section 141.540.6 states that the county collector "may, at his or her option" provide certified, registered, or restricted mail notice to a mortgagee or security holder.[6]

Missouri statutes do not require notice by mail to any other persons, instead requiring only generalized publication notice by posting the tax sale notice in the county courthouse and on the property, and by publishing notice in certain newspapers.[7]

---

[5] Beemer and Seal-O-Matic also argued below and argue in this Court that the collector violated section 429.300 in commencing the tax foreclosure action while the mechanic's lien action was still pending. This Court need not address the second argument because it holds in their favor on the notice argument.

[6] "The collector may, at his or her option, concurrently with the beginning of the publication of sale, cause to be prepared and sent by restricted, registered or certified mail with postage prepaid, a brief notice of the date, location, and time of sale of property in foreclosure of tax liens pursuant to sections 141.210 to 141.810, to the mortgagee or security holder, if known, of the respective parcels of real estate described in said petition, and to the addressee of such mortgagee or security holder according to the records of the collector." *§ 141.540.6.*

[7] Section 141.540.1 requires that notice of a tax sale be posted at the county courthouse in any county where sales of real estate are customarily made at the courthouse. Section 141.540.3 states that a notice of the tax sale "shall be published four times, once a week,

6

The fact that Missouri statutes do not specifically require mail notice of a tax sale to holders of mechanic's liens is not dispositive of whether the publication notice given here was adequate. To the contrary, it is well-established "that notice provisions prescribed in state statutes may not be constitutionally sufficient" for due process purposes. *Schlereth v. Hardy, 280 S.W.3d 47, 52 (Mo. banc 2009).* Indeed, as discussed in detail below, this Court has specifically held that similar statutory notice provisions requiring only publication notice to the holder of a deed of trust or mortgage are not adequate to meet due process requirements. *See Anheuser-Busch Employees' Credit Union v. Davis, 899 S.W.2d 868 (Mo. banc 1995); Lohr v. Cobur Corp., 654 S.W.2d 883 (Mo. banc 1983).* This Court has also recognized that certified mail may not always be adequate when the one giving notice is aware that it has not reached the addressee, even though that is all that the statute requires. *See Schlereth, 280 S.W.3d at 50-53.*

The question before the Court is whether the principles underlying these decisions similarly require notice of a tax sale be given by mail, rather than merely by publication, to a holder of a mechanic's lien[8] on land subject to the tax sale when the lien properly has been filed with the clerk as required by Missouri law and the holder's name and address thereby are reasonably ascertainable. This Court holds that such notice is required.

---

upon the same day of each week during successive weeks prior to the date of such sale, in a daily newspaper of general circulation regularly published in the county, …." Section 141.540.4 requires that "the county collector shall enter upon the property subject to foreclosure of these tax liens and post a written informational notice in any conspicuous location thereon."

[8] This case involves only properly filed mechanic's liens. It does not present the question, and this Court does not address, which, if any, other types of liens or interests in property similarly are entitled to personal notice under due process principles.

7

## A. When Due Process Requires Personalized Notice

In determining whether due process requires personalized notice to those holding mechanic's liens, it is helpful to review the development of the constitutional principles that require notice to holders of other property interests. The seminal case discussing the constitutional requirements for notice is *Mullane v. Central Hanover Bank & Trust, 339 U.S. 306 (1950).* *Mullane* addressed whether newspaper publication of judicial settlement of a common trust fund provided constitutionally sufficient notice to identifiable beneficiaries and other interested parties. *Id. at 307, 309.* In balancing the need of interested parties to learn about an event that will materially affect their interest with the burden imposed on the one who would be required to give notice, *Mullane* said:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice reasonably calculated, under all of the circumstances, to apprise interested parties* of the pendency of the action and afford them an opportunity to present their objections. … The notice must be of such nature as reasonably to convey the required information. …
> … [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

*Id. at 314-15* (internal citations omitted) (emphasis added).

Applying these principles, *Mullane* held that the beneficiaries of the trust had a substantial interest. As such, "[i]t would be idle to pretend that publication alone … is a reliable means of acquainting interested parties of the fact that their rights are before the courts. … Chance alone brings to the attention of even a local resident an advertisement …." *Id. at 315.* The Supreme Court concluded that publication notice, therefore, was

8

inadequate to satisfy due process as to those beneficiaries for whom the trustee had easy access to names and addresses. *Id. at 318.*[9]

In *Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983),* the Supreme Court extended to mortgagees the due process protection that had been applied to trust beneficiaries in *Mullane*. In *Mennonite,* an Indiana statute required only publication and posting notice of pending tax sales. *462 U.S. at 793.* *Mennonite* held that the lack of personalized notice was inadequate to protect the property interests held by a mortgagee. *Id. at 800*.

In particular, *Mennonite* noted that a mortgagee acquires a lien on the property that "may be conveyed together with the mortgagor's personal obligation to repay the debt secured by the mortgage." *Id. at 798.* Importantly, *Mennonite* also made the fact that the mortgagee had a security interest in the property a key factor in determining its property interest was sufficiently substantial to require due process protection, stating:

> A mortgagee's security interest generally has priority over subsequent claims or liens attaching to the property, and a purchase money mortgage takes precedence over virtually all other claims or liens including those which antedate the execution of the mortgage.

*Id.* Additionally, *Mennonite* noted that:

> [A] tax sale immediately and drastically diminishes the value of this security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors. Ultimately, the tax sale may result in the complete nullification of the mortgagee's interest, since the purchaser acquires title free of all liens and other encumbrances at the conclusion of the redemption period.

---

[9] By contrast, publication notice was sufficient as to those unknown beneficiaries "whose interest or whereabouts could not with due diligence be ascertained." *Mullane, 339 U.S. at 31*7.

9

*Id.* *Mennonite* concluded that these effects of a tax sale on the property interest of a mortgagee were sufficiently substantial to entitle the mortgagee's interest to due process protection, stating that "*[s]ince a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale*." *Id.* (Emphasis added.)

> Publication, *Mennonite* held, is inadequate to meet due process requirements:
>
> When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*.

*Id.* This is because "[n]otice *by mail or other means as certain to ensure actual notice* is a *minimum* constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party." *Id. at 800* (emphasis added).

These same notice requirements, *Mennonite* said, apply regardless of whether the affected party is "unlettered or well versed in commercial practice" and regardless of whether any party might have other means to find out about the sale, for "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." *462 U.S. at 799-800.*

In *Lohr v. Cobur Corp., 654 S.W.2d 883 (Mo. banc 1983)*, this Court was called on to determine whether deeds of trust were subject to *Mennonite*'s holding that the notice provisions of a statute may not be sufficient to satisfy due process. *Lohr* held that, as with mortgagees, when the deed of trust beneficiary is identified in the public records,

10

the identity of the beneficiary is reasonably ascertainable and due process requires that notice by publication alone is insufficient and must be supplemented by notice mailed to the beneficiary's last known address or by personal service. *Id. at 887.*

Similarly, and particularly relevant here, *Anheuser-Busch Employees' Credit Union v. Davis, 899 S.W.2d 868, 869 (Mo. banc 1995)*, held that a credit union that had loaned money to a property owner and had publicly recorded its interest was entitled to mailed notice of a tax sale of the property, stating:

> The United States Supreme Court in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983) …, and this Court in *Lohr v. Cobur Corporation*, 654 S.W.2d 883 (Mo. banc 1983), both have held that a mortgagee, whose interest in the property is publicly recorded, has a constitutionally protected property interest in real estate, and the due process clause of the Fourteenth Amendment to the United States Constitution requires the tax authority to give written notice of a tax sale to a mortgagee by "notice mailed to the mortgagee's last known available address, or by personal service." *Mennonite*, 462 U.S. at 798 …; *Lohr*, 654 S.W.2d at 886. Failure to provide such notice results in the tax sale being "insufficient to extinguish the deed of trust, which remains in full force and effect." *Lohr*, 654 S.W.2d at 886.

*See also In re Foreclosure of Liens for Delinquent Land Taxes by Action in Rem, Maximilian Invs., 190 S.W.3d 416, 420 (Mo. App. 2006)* (explaining that due process requires notice to mortgagees).

## B. Due Process Notice Requirements Applied to Mechanic's Lienholders

It is undisputed that only publication notice, and no personalized notice, was given to Beemer and Seal-O-Matic. It is also undisputed that abstracts of both of their mechanic's liens were publicly recorded in the office of the clerk of the Jackson County circuit court.

11

But the parties disagree as to: (1) whether the interest of the holder of a properly filed mechanic's lien is sufficient to require personalized notice and, if so, (2) whether the fact that the names and addresses of such lienholders were contained in the public records of liens statutorily required to be maintained by the circuit clerk means that they were reasonably ascertainable by the collector such that he was required to give them "[n]otice by mail or other means as certain to ensure actual notice." *Mennonite, 462 U.S. at 800.*

### i. A Mechanic's Lien Constitutes a Substantial Property Interest Entitled to Due Process Protection

Realty argues that this Court should hold that, while a mechanic's lien is a property interest, the holder of that lien interest is not entitled to the due process notice protections required by *Mullane, Mennonite*, and their progeny. While Realty does not lay out its reasoning expressly, it appears it believes that a lienholder's interest is insufficiently substantial to justify the added trouble it would impose on the collector to have to look at the circuit clerk's records. Realty offers no cases rejecting the need to give personalized notice to holders of mechanic's liens on the basis that mechanic's liens are not sufficiently substantial to be worth the trouble of providing personalized notice, however, and this Court rejects that argument.

As noted earlier, *Mennonite* held that a mortgagee's interest is sufficiently substantial to be entitled to due process protection after noting that: (1) the mortgagee acquires a lien on the mortgagor's property; (2) that lien is given priority over most other subsequent security interests, and a purchase money security interest is given priority

12

even over prior security interests; and (3) a tax sale diminishes or nullifies the mortgagee's lien interest. *Mennonite, 462 U.S. at 798.*

Similarly, the Missouri legislature has provided that the holder of a mechanic's lien has a lien on the structure or real property subject to the mechanic's lien, and it has given the mechanic's lienholder priority over almost every other type of lien. *See sections 429.010; 429.060, RSMo 2000.*[10] In fact, in *Bob DeGeorge Associates, Inc. v. Hawthorn Bank, 377 S.W.3d 592, 598 (Mo. banc 2012)*, this Court held that "[s]o long as a mechanic's lien arises on the land and is filed properly, it will have priority over any third-party encumbrance attaching after the date work began," including over a purchase-money deed of trust that was not filed until after the work subject to the mechanic's lien had commenced. *Id. at 598-99.* A mechanic's lien on the structure similarly is given priority over most other encumbrances and liens under section 429.050. *Id. at 598.* A mechanic's lien, therefore, in many circumstances has been made superior to the lien of a mortgagee or the deed of trust of a mortgagee, which are the kinds of property interests found substantial in *Mennonite* and *Davis.*[11]

---

[10] More specifically, section 429.010.1 provides that those furnishing work or labor on real property shall have a lien "upon such building … and upon the land." Section 429.060 states that "[t]he lien for work and materials … shall be preferred to all other encumbrances which may be attached to or upon such buildings, bridges or other improvements, or the ground, or either of them, subsequent to the commencement of such buildings or improvements."

[11] Of course, pursuant to statute, a prospective lienholder must file "within six months after the indebtedness shall have accrued" or, with regard to rental equipment, "within sixty days after the date the last of the rental equipment or machinery was last removed from the property." *§ 429.080.* The lienholder must then commence an enforcement action within six months after filing the lien. *§ 429.170.*

Indeed, in *Home Bldg. Corp. v. Ventura Corp., 568 S.W.2d 769 (Mo. banc 1978)*, this Court addressed the rights of a lienholder against a municipal housing authority that purchased the property. The Court recognized that the lien arose under the "first spade rule" from the visible commencement of the work and that the filing of the lien with the clerk and the later filing of suit continued the lien. *Id. at 773.* The lawsuit, it said, was to "adjudicate and enforce" the lien that had arisen at the first spade. *Id.*

In other words, contrary to the suggestion of the concurring opinion, a judgment on the lien is not necessary to transform a "claim" into an actual "lien," which the concurring opinion recognizes is a substantial property interest. The lien – and, therefore, the substantial property interest – exists immediately, subject to divestment, in effect, if the statutory steps later are not taken to protect it. *Id.* Indeed, *Rosenzweig*, relied on by the concurring opinion for the point that a lien is not "perfected" – that is, enforceable – until a judgment is entered on it, specifically holds in denying rehearing by the Court:

> The very object of the mechanics' lien decree, entered by the trial court, was to enforce the lien created by the mechanics' lien statute, and the decree did not create a new lien. *The statement in the principal opinion [as to which rehearing was therefore denied] to the effect that the decree created a lien is inaccurate.* A decree in a mechanics' lien suit perfects and perpetuates the lien created by statute. *The decree itself does not bring the lien into existence.*

*Rosenzweig v. Ferguson, 158 S.W.2d 124,128 (Mo. 1941)* (emphasis added). *See also W. Cent. Concrete, LLC v. Reeves, 310 S.W.3d 778, 782 (Mo. App. 2010)* ("Section 429.170 requires an action to enforce a mechanic's lien 'shall be commenced within six months **after filing the lien**, *and prosecuted without unnecessary delay*.'" *Id.* (italics in original)); *§ 429.010.1* (those furnishing work or labor on real property shall have a lien

14

"upon such building…and upon the land"). The holder of a mechanic's lien has a lien, not merely a lien claim that later can be transformed into a lien upon judgment; judgment allows only the enforcement of the existing lien, much like the existence of a mortgage does not entitle the mortgage holder to take possession of the property absent a foreclosure judgment (unless otherwise provided in the mortgage or deed of trust).

That is no doubt why, in *Home Bldg. Corp.,* this Court specifically rejected the argument that a municipal authority that took possession of property subject to a mechanic's lien before judgment could limit the lienholder's right to maintain and enforce the lien, stating that what the lienholder:

> seeks to do in this case is to enforce a [mechanic's] lien *which is comparable to the lien of a mortgage against the property.* If [the municipal housing authority] had purchased property on which there was an existing deed of trust, it would not be entitled to have enforcement of the lien thereof stayed. Likewise it is not entitled to a stay of enforcement of [lienholder's] mechanic's lien.

*Home Bldg. Corp., 568 S.W.2d at 777* (emphasis added).[12] The interest of a mechanic's lien holder is a property interest comparable to that of the lien of a mortgagee against the property.

Nonetheless, section 141.550.3 allows a mechanic's lienholder's interest to be nullified by a tax sale by providing that a tax sale conveys the "whole interest" of "every

---

[12] The action in *Home Bldg. Corp.* was one to enforce the lien against the municipal housing authority, which had purchased the property after the lien attached but before the judgment was entered on the lien. *Home Bldg. Corp., 568 S.W.2d at 770.* The question was whether any valid right to enforce the lien survived the sale to the municipal housing authority. *Id. at 776.* As the concurring opinion notes, the Court found that the lien did not take a substantial property interest from the holder of the property, but also, in the portion just quoted, that a lien is a property interest entitled to the same protection as is a mortgage interest. *Id. at 777.*

15

person having or claiming any right, title or interest in or lien upon such real estate, whether such person has answered or not." Further, section 141.570.2 states that, upon the sale, all persons "shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption, and the court shall order immediate possession of such real estate be given to such purchaser."[13]

In other words, sections 141.550.3 and 141.570.2 provide that a tax sale will extinguish a preexisting mechanic's lien. As applied here, the unpaid taxes on the property plus costs and fees totaled $341.47. Realty paid $51,000 to purchase the property at the tax sale. If allowed to stand, that was sufficient to immediately extinguish the $352,374.56 in liens held by the two mechanic's lienholders, who were thereafter forever barred and foreclosed from seeking recovery on their liens.

As a result, it is undisputable that a tax sale will "immediately and drastically diminish[] the value" of a mechanic's lienholder's interest "by granting the tax-sale purchaser a lien with priority over that of all other creditors." *Mennonite*, *462 U.S. at 798.* Similar concerns are what led *Mennonite* to recognize a mortgagee's interests as substantial property interests subject to due process notice protections. This Court finds that mechanic's liens on real property are substantial property interests subject to due process notice protections.[14]

---

[13] Section 141.570.2 also states that "[t]he title to any real estate which shall vest in any purchaser, upon confirmation of such sale by the court, shall be an absolute estate in fee simple, …" subject to narrow exceptions not relevant here.

[14] It cannot be doubted that the monetary value of the mechanic's liens amounts to a substantial property interest, exceeding the value of many mortgages entitled to personalized notice. But due process rights do not vary depending on the value of one's

16

### ii. A Mechanic's Lienholder's Name and Address is Reasonably Ascertainable

Because a mechanic's lien is subject to due process protection, notice of a tax sale must be reasonably calculated to reach a mechanic's lienholder whose name and address is reasonably ascertainable. In *Mennonite*, the Supreme Court explained, "*Notice by mail or other means as certain to ensure actual notice* is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are *reasonably ascertainable*."[15]   *462 U.S. at 800* (emphasis added). In determining whether an interest-holder's name and address are "reasonably ascertainable," the state must exercise "reasonably diligent efforts." *Id. at 798, n.4.* On the other hand, the Supreme Court said, due process does not require "extraordinary efforts to discover the identity and whereabouts of a mortgagee *whose identity is not in the public record*." *Id.* (Emphasis added.)

Applying these principles here, it is uncontested that the names and addresses of Beemer and Seal-O-Matic were in the records of mechanic's liens maintained by the circuit clerk of Jackson County. Realty argues that the county collector already must examine the recorder of deed's records to identify those with mortgages or other recorded

---

property. So long as the nature of the property interest is substantial, no case requires the actual amount at stake to be of a particular size so long as it is not de minimus.

[15] Regarding the type of mailed notice, section 141.540 requires notice by restricted, registered, or certified mail. But, in *Jones v. Flowers, 547 U.S. 220, 234-35 (2006)*, the United States Supreme Court held that if certified mail goes unclaimed, then resending notice by regular mail may be required in order to comply with due process requirements.

17

interests and that to require the county collector also to search the circuit clerk's abstract book requires unreasonable efforts. This Court disagrees.

In so determining, the Court particularly notes that Beemer and Seal-O-Matic did not simply make a personal choice to file their mechanic's liens with the circuit clerk nor did they file them there to make their mechanic's lien records harder to locate. Rather, they filed their mechanic's liens with the circuit clerk because that is what they were required to do by section 429.080, which states that a mechanic's lien should be filed "with the clerk of the circuit court of the proper county." Further, a filing with the circuit clerk contains all the information needed to give notice to the holder of a mechanic's lien, for section 429.090 requires the circuit clerk to "maintain an abstract [of mechanic's lien filings], containing the date of its filing, the name of the person seeking to enforce the lien, the amount claimed, the name of the person against whose property the lien is filed, and a description of the property charged with the same." Finally, the clerk's abstract of filed mechanic's liens has been recognized by this Court to constitute a "proper public record." *Erbs, 237 S.W.2d at 130*. As noted, in explaining what amount of effort is required, *Mennonite* held that due process does not require "extraordinary efforts to discover the identity and whereabouts of a mortgagee *whose identity is not in the public record*." *462 U.S. at 798, n.4* (emphasis added). By implication, a mortgagee whose identity is in the public record can be identified with "reasonable" rather than "extraordinary" efforts. That is the case with Beemer and Seal-O-Matic. Their names

and addresses were reasonably identifiable from the public record in the place where the legislature has said that public record should be maintained.[16]

At some point a search may become unreasonable and place on the collector a substantially greater duty than envisioned by *Mullane* and *Mennonite*.[17] But a search of two separate public-records sources does not reach that point. *Mennonite* noted that, in *Schroeder v. City of New York, 371 U.S. 208 (1962),* the Supreme Court held that a property owner must receive notice of "condemnation proceedings when his name and address were readily ascertainable from both deed records and tax rolls." *Mennonite, 462 U.S. at 797.* The Supreme Court in so stating implicitly recognized that relevant records that need to be reviewed to obtain the names and addresses of those entitled to notice may require review of more than merely deed records or records from any public record repository.[18]

---

[16] Indeed, while they do not constitute official records, mechanic's liens are generally reported on Case.net as well.

[17] For instance, in *Schwartz v. Dey, 780 S.W.2d 42 (Mo. banc 1989)*, this Court held that it was unreasonable to require a county to ascertain whether a property owner's publicly recorded address was correct. There, the plaintiffs owned property in Missouri, which was subject to a tax sale, but lived in Maryland. *Id. at 42-43.* The plaintiffs contended that the county could have located their Maryland address by contacting the notary on the deed or the present tenants of the Missouri property. *Id. at 44.* The Court ruled that these situations placed on the county a substantially greater duty than envisioned by *Mullane* and *Mennonite*. *Id. at 44-45.*

[18] Realty claims that this entire case could have been avoided if Beemer and Seal-O-Matic filed a statutory lis pendens notice with the recorder of deeds. It is unclear if Realty thereby intends to recognize that a mechanic's lienholder does have a right to personalized notice but only if searching in a single location would have revealed the interest. Regardless, such a filing was not required. While, as Realty notes, Beemer and Seal-O-Matic could have supplemented their statutory filings with the filing of a lis pendens with the recorder of deeds, this would be an extra step not necessary or required to preserve their mechanic's lien claims. As noted above, the United States Supreme

*Jones v. Flowers, 547 U.S. 220 (2006)*, also is on point.  It specifically held that, when the state became aware that certified mail notice of a tax sale was returned unclaimed and so had been ineffective, reasonable diligence required the state to take additional steps to effect notice, such as by giving additional notice by regular mail, finding an alternate address, or other practicable alternatives, because "the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice." *Id. at 230*.  Missouri has applied *Jones* and required that additional notice by regular mail be given when certified mail is unclaimed.  *Schlereth, 280 S.W. at 47*.[19]  In fact, even sections 141.540.5 and 141.540.6 require that, if the certified-mailed notice to the owner

---

Court has made it clear that "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation."  *Mennonite, 462 U.S. at 799.* In this particular case, it is also worth noting that, in light of the fact that the collector failed to find or give notice to Seal-O-Matic despite the fact that it voluntarily filed a discretionary notice of claim of mechanic's lien in the Jackson County recorder of deeds office, it is purely speculative to suggest that the filing of a lis pendens in those same records would have caused the collector to give personal notice to Seal-O-Matic or Beemer.

[19] *Cf. Chemetron Corp. v. Jones, 72 F.3d 341, 345-46 (3d Cir. 1995)* (explaining that if claimants were "known" creditors, then due process entitled them to actual notice of the bankruptcy proceedings.   If claimants were "unknown" creditors, however, then notice by publication is sufficient to satisfy the requirements of due process.); *New Brunswick Sav. Bank v. Markouski, 123 N.J. 402, 422-23 (1991)* (applying  a similar analysis to a judgment lien and finding it constitutes a substantial property interest because it "encumbers all the real property the debtor owns in the state for twenty years, has value to third parties, encumbers the land in a private sale, and carries with it the right of execution." The court then moved to the reasonability analysis, giving three factors to determine whether an address is "reasonably ascertainable:" (1) an evaluation of the public recording system, if one exists, for the property interest in question; (2) the likelihood that the plaintiff in the proceeding has actual knowledge or reasonable access to the names and addresses of the affected parties; and (3) the relative ease or difficulty with which the plaintiff may find those addresses not on the public record. *Id. at 419-20*).

identified in the tax bills or to the holder of the deed of trust come back unclaimed, the collector "shall make a search of the records maintained by the county, *including* those kept by the recorder of deeds, to discern the name and address …." (emphasis added). The statute, thereby, contemplates that a search of more than one location at which public records may be kept by the county may be required.

For these reasons, the collector was required to undertake reasonable additional efforts to identify and give notice to holders of mechanic's liens. It is not too much to require that those reasonable additional efforts include checking the abstract book maintained, as required by statute, in the circuit clerk's office. Not only has this Court held that the circuit clerk's records are "proper public records" chosen by the legislature as the repository of information about mechanic's liens, but, in many if not most counties, the circuit clerk's office is in the same building as is the recorder of deed's office. A search of the circuit clerk's records of mechanic's liens is the type of reasonable search envisioned by *Mullane* and *Mennonite*. In failing to give notice by mail or other means as certain to ensure actual notice to Beemer and Seal-O-Matic, despite the fact that their mechanic's liens were filed with the circuit clerk and were reasonably available to the collector, the collector's notice was inadequate. The notice was not reasonably calculated to reach either Beemer or Seal-O-Matic.

## IV. CONCLUSION

A mechanic's lien constitutes a substantial property interest, which is significantly affected by a tax sale, and is subject to due process protection. Notice of a tax sale must be given in a manner that is reasonably calculated to reach a mechanic's lienholder whose

name and address are reasonably ascertainable. The name and address of a mechanic's lienholder is reasonably ascertainable through a search of the abstact book, which is a public record required by statute to be maintained by the clerk of the circuit court of each county. It is not unreasonable to require the party providing notice to search both the circuit clerk's office and the recorder of deed's office. Here, the collector did not provide notice to Beemer and Seal-O-Matic, despite the fact that their names and addresses were reasonably ascertainable from the circuit clerk's public records. Because Beemer and Seal-O-Matic did not receive notice, the trial court properly set aside the tax sale in question. The judgment is affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

Russell, C.J., Breckenridge, Draper and
Teitelman, JJ., concur; Wilson, J., concurs
in separate opinion filed; Fischer, J.,
concurs in opinion of Wilson, J.

22



# SUPREME COURT OF MISSOURI
## en banc

IN THE MATTER OF FORECLOSURE LIENS  )
FOR DELINQUENT TAXES BY ACTION IN    )
REM:  COLLECTOR OF REVENUE, BY AND   )
THROUGH THE DIRECTOR OF              )
COLLECTIONS FOR JACKSON COUNTY,      )
MISSOURI,                            )
                                     )
                        **Respondents,**    )
                                     )
**v.**                               )     **No. SC93982**
                                     )
PARCELS OF LAND ENCUMBERED WITH      )
DELINQUENT LAND TAX LIENS; REALTY    )
ACQUISITION, LLC,                    )
                                     )
                        **Appellant.**     )

## CONCURRING OPINION

The principal opinion holds that due process entitles a mechanic's lienholder, whose name and address are reasonably ascertainable, to individual notice of a tax sale because a mechanic's lien constitutes a legally protected property interest that would be affected by a tax sale.  I agree.  I write separately, however, to emphasize that this holding applies only to a lienholder, i.e., someone who has prosecuted a claim for mechanic's lien to judgment.  In particular, this holding does not apply to an entity that

has filed a mechanic's lien claim – or a subsequent mechanic's lien petition – but for which judgment has not been entered under sections 429.210 to 429.240.[1]

Beemer Construction Company ("BCC") and Seal-O-Matic Paving Company ("SOMP") challenged the foreclosure on the ground that the County failed to give them individual notice of the foreclosure sale of the relevant property. They also challenged on the ground that they were entitled to individual notice when the County filed the tax foreclosure petition and when judgment was entered in that case under the notice provisions of sections 141.440 and 141.500, respectively. The County's filing of the tax foreclosure petition (and the entry of judgment in the action) occurred long before judgment was entered in favor of BCC or SOMP on their mechanic's lien petitions. Accordingly, even though BCC's and SOMP's perfected and enforceable mechanic's liens were "legally protected property interests" worthy of protection under due process, they did not have perfected and enforceable mechanic's liens (and, therefore, no right to individual notice under due process) until judgment was entered in their favor on April 22, 2011, on their mechanic's lien petitions.

A party seeking to establish an enforceable mechanic's lien must file a timely claim (or "demand") with the circuit clerk pursuant to section 429.080, RSMo Supp. 2013. Within six months of that filing, the party must then file an action to perfect the claimed lien, and this action must be "prosecuted without unnecessary delay to final judgment." § 429.170. It is the judgment, therefore, that converts a worker's statutory

---

[1] All statutory citations are to RSMo 2000 unless otherwise specified.

claim for a lien into a lien itself. Even though priority of this lien, once perfected, may relate back to the date when the work was performed, the worker possesses no substantial interest in the property until the mechanic's lien judgment is entered. *See Rosenzweig v. Ferguson*, 158 S.W.2d 124, 128 (Mo. 1941) (until judgment is reached in a mechanic's lien action that conforms to the procedural requirements prescribed by statute, the lien is not perfected and cannot be foreclosed).

When a tort plaintiff sues a defendant for money damages in a county where the defendant owns real property, the plaintiff will have an enforceable lien on (or legally protected interest in) the defendant's property in that county the moment judgment is entered in the plaintiff's favor. Until that judgment is entered, however, the plaintiff has no legally protected property interest in the defendant's property. The same is true with a mechanic's lien claimant. Until judgment is entered in favor of the claimant on a timely mechanic's lien petition, the filing of a mechanic's lien claim is "comparable to the filing of a lis pendens notice." *Home Bldg. Corp. v. Ventura Corp.*, 568 S.W.2d 769, 774 (Mo. banc 1978). Both the mechanic's lien claim and the mechanic's lien petition are filed in pursuit of – but neither, by itself, constitutes – a legally protected property interest.[2]

---

[2]   The so-called "first spade" rule deals solely with the ***priority*** of a mechanic's lien, not when an enforceable lien (and, therefore, when a legally protected property interest) is created. *See Bob DeGeorge Associates, Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 599 (Mo. banc 2012) ("Under the ***relation-back priority*** provided by section 429.060 for mechanic's liens against the land, June 6 serves as the relevant date for determining first-in-time priority of the two mechanics' liens.") (emphasis added). If a legally protected interest is created at any time before the mechanic's lien judgment is entered, such as when the "first spade" is turned or when the mechanic's lien claim  (or even the mechanic's lien petition) is filed, there would be no need for the legislature to concern itself with any such "relation-back priority."

Because it is the mechanic's lien judgment that creates the legally protected property interest on which due process protections depend, the sequence of events in this case illustrates why the Court's holding is limited to BCC's and SOMP's right to notice of the foreclosure sale and does not extend to the claim that they were entitled to notice of the tax foreclosure petition and judgment. The relevant dates and actions are:

| Date | Mechanic's Lien Actions | Tax Foreclosure Actions |
|---|---|---|
| April 30, 2007 | BCC files mechanic's lien claim | |
| Oct. 26, 2007 | BCC files mechanic's lien petition | |
| Dec. 7, 2007 | SOMP files mechanic's lien claim | |
| June 9, 2008 | SOMP files mechanic's lien petition | |
| June 10, 2008 | BCC and SOMP petitions are consolidated | |
| May 24, 2010 | | County files petition to foreclose liens for delinquent taxes |
| Aug. 31, 2010 | BCC and SOMP mechanic's lien petitions are tried | |
| Nov. 12, 2010 | | Judgment of foreclosure of liens for delinquent land taxes |
| April 12, 2011 | Judgment is entered on BCC and SOMP mechanic's lien petitions | |
| June 28, 2011 | | Notice of foreclosure sale given |
| Aug. 22, 2011 | | Foreclosure sale |

As this timeline illustrates, the judgment giving BCC and SOMP enforceable mechanic's liens on the subject property came nearly 11 months *after* the County filed the tax foreclosure action and five months *after* judgment of foreclosure was entered in that case. But, in a turn of events both presumably accidental and likely rare, judgments in favor of BCC and SOMP were entered (and, as a result, they acquired legally protected interests in the property) *before* the time came for the County to give notice of the foreclosure sale required by section 141.540.

Due process requires "notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). These protections were extended to mortgagees in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983). The Supreme Court held that, because a "mortgagee clearly has a *legally protected property interest*, he is entitled to notice reasonably calculated to apprise him of a pending tax sale." *Id.* at 798 (emphasis added). Accordingly, the County was obligated to give BCC and SOMP individualized notice of the foreclosure sale because the April 12 judgment on their mechanic's lien petitions gave them legally enforceable interests in the property almost 14 weeks before the four-week statutory deadline for foreclosure sale notices.

On the other hand, the County was not obligated to give BCC and SOMP individual notices when it filed the tax foreclosure action (and when judgment was entered in that case) because those events occurred prior to the April 12 judgment in their mechanic's lien cases. Even though BCC and SOMP had filed timely mechanic's lien claims under section 429.080 and timely mechanic's lien petitions under section 429.170,

5

they had no legally enforceable interests in the property and no due process right to individual notices concerning the property until judgments were entered on their mechanic's lien petitions under sections 429.210 to 429.240.

_____
Paul C. Wilson, Judge